UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AMIR TLIABICHEV,

Petitioner,

v.

TODD BLANCHE, *et al.*,

Respondents.

Case No. C26-3237-MLP

ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Amir Tliabichev is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. He has filed, through counsel, a petition for writ of habeas corpus under 28 U.S.C. § 2241 challenging his recent redetention by ICE. (Dkt. # 1.) Respondents filed a return (dkt. # 7), supported by the sworn declaration of ICE Deportation Officer Christopher Hubbard (dkt. # 8) and an unsworn declaration from their counsel, Lawrence Van Daley, attaching portions of Petitioner's A-file (dkt. # 9). Petitioner filed a traverse. (Dkt. # 10.) Having considered the parties' submissions and the governing law, the Court GRANTS in part Petitioner's federal habeas petition (dkt. # 1).[1]

## I. BACKGROUND

On December 1, 2021, Petitioner, a citizen of the Russian Federation, entered the United States and was apprehended by U.S. Customs and Border Protection (Dkt. # 1, ¶¶ 21-22;

[1] The parties consented to proceed before the undersigned Magistrate Judge. (Dkt. # 5.)

Hubbard Decl., ¶ 4; Van Daley Decl., Ex. 1 at 2.) On December 3, 2021, Petitioner was served a Notice to Appear ("NTA") charging him as removable under Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA"), codified at 8 U.S.C. § 1182(a)(7)(A)(i)(I), and placed in removal proceedings. (Hubbard Decl., ¶ 5; Van Daley Decl., Ex. 1.) That same day, he was paroled into the United States under 8 U.S.C. § 1182(d)(5)(A). (Dkt. # 7 at 4; Van Daley Decl., Ex. 3 at 2.) His parole expired in December 2022. (Dkt. # 1, ¶ 62; Van Daley Decl., Ex. 3 at 2.) The record contains no documentation of any release conditions.

Petitioner filed a Form I-589 Application for Asylum and for Withholding of Removal on March 8, 2022. (Dkt. # 1, ¶ 42, Ex. C.)[2] According to Petitioner, he at some point filed an updated application for asylum, but it is unclear when this occurred. (*Id.*, ¶ 43.) Petitioner was granted employment authorization by Respondents in 2022, and that authorization was renewed in February 2026. (Dkt. #1, ¶ 44, Ex. E.)

On August 31, 2026, Enforcement and Removal Operations ("ERO") agents in Idaho "conducted a random inspection of the commercial vehicle Petitioner was driving." (Hubbard Decl., ¶ 9; Van Daley Decl., Ex. 3 at 3.) On the same day, Petitioner was served with a Form I-200 Warrant for Arrest, a Form I-286 Notice of Custody Determination, and a Form I-826 Notice of Rights and Request for Disposition. (Hubbard Decl., ¶ 9-10; Van Daley Decl., Exs. 3-5.)

According to Respondents, on the day of Petitioner's arrest, ERO Idaho learned that his commercial license was invalid, and that he had received a violation on August 10, 2026, for operating a commercial vehicle without a valid commercial driver's license and was not allowed to operate one. (Dkt. # 7 at 4; Hubbard Decl., ¶ 9; Van Daley Decl., Ex. 3 at 3.) Respondents also

---

[2] The Hubbard Declaration states that Petitioner filed the application on June 14, 2023. (Hubbard Decl., ¶ 6.) The document attached to the Petition clarifies the application was filed and pending as of March 8, 2022. (Dkt. # 1, Ex. C.)

contend that further record checks revealed Petitioner had failed to report to ERO as allegedly required and that he had failed to update his address. (*Id.*) Respondents provide no supporting documents for these allegations.

Petitioner attached to his reply brief a certified abstract of his driving record from the New York Department of Motor Vehicles, printed August 18, 2026, which lists his commercial status as “Valid.” (Dkt. # 10, Ex. F at 1.) A Motor Vehicle Report dated September 2, 2026, also lists his Class A commercial license as valid and shows no August 2026 violations. (*Id.*, Ex. G.) The abstract does, however, show that Petitioner had a violation for “Improper classification or endorsement on driver’s license” on March 3, 2025 (*Id.*, Ex. F at 4), and the Motor Vehicle Report shows that Petitioner’s license was suspended from June 7, 2025 to July 30, 2025, and from August 26, 2025 to October 9, 2025, for “failure to answer a citation, pay fines, penalties and/or costs related to original violation[s]” *(Id.*, Ex. G at 2.)

Petitioner also notes, in relation to the alleged violations of his conditions of release, that none of the documents or declarations provided by Respondents identify a reporting date Petitioner missed or the document that required him to report. (*Id.* at 7.) In addition, the Form I-213 Record of Deportable/Inadmissible Alien lists Petitioner’s address in Oceanside, New York, the same town listed on the Notice to Appear. (Van Daley Decl., Ex. 1 at 1, Ex. 3 at 1.)

Notable as well is the fact that the Hubbard Declaration states that “[a]s of the date of this declaration, Petitioner has not requested a bond hearing” (Hubbard Decl., ¶ 13), whereas the Notice of Custody Determination issued on August 31, 2026, states that Petitioner did request that an immigration judge review his custody determination. (Van Daley Decl., Ex. 4 at 2) Petitioner’s asylum application remains pending, and he is scheduled for an individualized hearing on October 30, 2026. (Hubbard Decl., ¶ 12.)

## II. DISCUSSION

Petitioner contends his redetention violated his Fifth Amendment right to procedural due process. (Dkt. # 1, ¶¶ 98-104.) Respondents argue that Petitioner remains an applicant for admission under 8 U.S.C. § 1225(b)(2)(A), and that the August 31, 2026, encounter was individualized because officers found that he had failed to report to ERO, had failed to update his address, and was driving a Class A commercial vehicle without a valid commercial license after a citation for the same conduct. (Dkt. # 7 at 2.) They contend his detention is lawful because "due process does not require restoration of the expired parole or a hearing at which the government must prove flight risk or danger by clear and convincing evidence." (*Id.*)

### A. Legal Standards

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). A habeas petitioner may obtain relief by proving by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); 28 U.S.C. § 2241(c).

Detention of noncitizens is governed by INA §§ 235-36, codified at 8 U.S.C. §§ 1225-26. Section 1226(a) provides the "default rule," allowing discretionary detention of noncitizens "already present in the United States." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018).

Section 1225 applies to "applicants for admission" to the United States, defined as a noncitizen "present in the United States who has not been admitted or who arrives in the United States[.]" 8 U.S.C. § 1225(a)(1). Applicants for admission are generally subject to mandatory detention under § 1225(b) and may be released only on parole "for urgent humanitarian reasons

or significant public benefit[.]" 8 U.S.C. § 1182(d)(5)(A); *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).

Humanitarian parole is a discretionary, case-by-case exception to detention. 8 U.S.C. § 1182(d)(5)(A). Regulations require that parolees "present neither a security risk nor a risk of absconding[.]" 8 C.F.R. § 212.5(b). A grant of parole therefore reflects a determination that (1) urgent humanitarian reasons or significant public benefits justify release, and (2) the person is not a security or flight risk. *See* 8 U.S.C. § 1182(d)(5)(A), 8 C.F.R. § 212.5(b).

Parole may terminate automatically upon the individual's departure from the United States or "at the expiration of the time for which parole was authorized," without written notice. 8 C.F.R. § 212.5(e)(1). Otherwise, it may be terminated if the purpose of parole has been accomplished or if an authorized Department of Homeland Security ("DHS") official determines that neither humanitarian reasons nor public benefit warrants continued presence in the United States. *Id.*; *see also* 8 U.S.C § 1182(d)(5)(A). In those circumstances, written notice of termination is required. 8 C.F.R. § 212.5(e)(2)(i).

Following termination of parole, "any order of exclusion, deportation, or removal previously entered shall be executed." 8 C.F.R. § 212.5(e)(2)(i); *see also* 8 C.F.R. § 212.5(e)(1). "If the exclusion, deportation, or removal order cannot be executed within a reasonable time, the [noncitizen] shall again be released on parole unless in the opinion of [an authorized DHS official] the public interest requires that the [noncitizen] be continued in custody." 8 C.F.R. § 212.5(e)(2)(i). Continued detention thus must rest on an individualized assessment; otherwise, renewed parole is required.

Where the nominal parole period has lapsed but DHS leaves the noncitizen at liberty and continues to process applications or authorize employment, courts have inferred that parole was

effectively continued beyond the stated expiration date. In that circumstance, any later termination must comply with the written-notice procedures of 8 C.F.R. § 212.5(e)(2)(i). *See Telenchana v. Hermosillo*, 2026 WL 696806, at *7 (W.D. Wash. Mar. 12, 2026); *Dieng v. Hermosillo*, 2026 WL 411857, at *6 (W.D. Wash. Feb. 13, 2026).

**B. Detention Authority**

Respondents contend that Petitioner, as an "applicant for admission" defined in § 1225(a)(1), is subject to mandatory detention under § 1225(b)(2)(A). (Dkt. # 7 at 2.)

Petitioner was initially released on discretionary parole. Respondents assert that parole expired in 2022 and that no further process was required. (Dkt. # 7 at 3.) However, parole was effectively extended when the government continued to process Petitioner's asylum application, renewed his employment authorization, and left him at liberty for almost four years. Yet the record shows no compliance with the governing regulations, which require a determination by an authorized official that neither humanitarian reasons nor public benefit warrants continued parole. *See* 8 C.F.R. § 212.5(e)(2)(i).

In any event, even if § 1225(b) applies here, "statutory authority to detain does not obviate Respondents' obligation to comply with due process." *Telenchana*, 2026 WL 696806, at *10; *see also E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025) ("That the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process.").

**C. Redetention Procedure**

Due process protections extend to all persons within the United States, including noncitizens, regardless of immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). Procedural due process requires meaningful notice and a genuine opportunity to be heard before

the government infringes a protected liberty interest. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). In immigration detention cases, courts in this Circuit apply the *Mathews* balancing test, weighing: (1) the private interest affected; (2) the risk of erroneous deprivation under existing procedures and the value of additional safeguards; and (3) the government's countervailing interest, including fiscal and administrative burdens. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206-07 (9th Cir. 2022); *see also E.A. T.-B.*, 795 F. Supp. 3d at 1321 n.4 (collecting cases).

*1. Private Interest*

Petitioner's interest in remaining free from physical confinement is a substantial liberty interest. *See Zadvydas*, 533 U.S. at 690; *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. Sept. 12, 2025). This liberty interest exists even where, as here, release is conditional. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (collecting cases). A person previously released on parole under 8 U.S.C. § 1182(d)(5)(A) is deprived of that interest upon renewed detention. *See Dieng v. Hermosillo*, 2026 WL 411857, at *3-5 (W.D. Wash. Feb. 13, 2026); *Zavorin v. Wamsley*, 2026 WL 309733, at *3-4 (W.D. Wash. Feb. 5, 2026); *Torres v. Hermosillo*, 2026 WL 145715, at *3-5 (W.D. Wash. Jan. 20, 2026); *Ramirez Tesara*, 800 F. Supp. 3d at 1136. During the almost four years he was at liberty, Petitioner applied for asylum, lived openly in his community, obtained a commercial driver's license and maintained employment. (Dkt. # 10 at 12.)

Respondents argue that while Petitioner's liberty interest is "real . . . it is the interest of an unadmitted arriving alien in pending proceedings under 8 U.S.C. § 1229a." (Dkt. 7 at 9) They further argue that because Petitioner's parole expired in 2022, his detention during removal proceedings is valid. (*Id.*) However, Petitioner's asylum application is currently pending, and Respondents have not produced any documentation of the conditions of his parole or evidence of

the alleged violations. Under these circumstances, Petitioner's significant liberty interest weighs in his favor.

2. *Risk of Erroneous Deprivation*

Respondents assert that the facts surrounding Petitioner's alleged violations and the conditions surrounding his arrest "are concrete and contemporaneous," but they have not submitted any evidence of the alleged violations. (*See* dkt. # 7 at 9-10.) It is undisputed that ICE did not inform Petitioner of the alleged violations prior to the arrest, allow him to cure or explain them, or provide any opportunity to contest the factual basis for redetention before revoking his release. Respondents argue that the automatic expiration of parole required no new hearing, and that an arriving alien has no right to a custody redetermination hearing before an immigration judge. (*Id*. at 10) However, the Notice of Custody Determination issued to Petitioner explicitly states that "You may request a review of this custody determination by an immigration judge" and Petitioner marked the appropriate box requesting review. (Van Daley Decl., Ex. 4 at 3.)

Furthermore, the risk of erroneous deprivation is heightened by DHS's apparent failure to follow its own parole-termination procedures under 8 C.F.R. § 212.5(e)(2)(i). Courts confronted with similar facts have found that "the risk of erroneous deprivation is significant" when DHS disregards those procedures. *Torres v. Hermosillo*, 2026 WL 145715, at *7 (W.D. Wash. Jan. 20, 2026); *see also Telenchana*, 2026 WL 696806, at *7-10; *Dieng*, 2026 WL 411857, at *6-8; *Zavorin*, 2026 WL 309733, at *4. The second *Mathews* factor therefore favors Petitioner.

3. *Governmental Interest*

Respondents argue that the governmental interest in detention is heightened here because "Petitioner is an applicant for admission who is not clearly entitled to be admitted" and the government has an interest in ensuring the Petitioner attends his scheduled individual hearing on

October 30, 2026. (Dkt. 7 at 11) They cite to the alleged failure to report to ERO, alleged failure to update his address, and the unsupported contention that his commercial license was invalid. (Dkt. 7 at 11) However, Respondents provide no documentation of the requirements of Petitioner's parole, nor do they provide supporting documentation of the alleged violations.

The government has legitimate interests in enforcing immigration laws and ensuring a noncitizen's appearance at proceedings. Respondents, however, identify no concrete way in which providing a short, pre-deprivation custody hearing before redetention would materially impede those interests. Custody and bond hearings already occur regularly within the existing immigration system, and courts have repeatedly found the incremental administrative burden of such hearings modest relative to the risk and consequences of erroneous detention. *See*, *e.g.*, *E.A. T.-B.*, 795 F. Supp. 3d at 1324; *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019).

In sum, the *Mathews* factors strongly favor Petitioner. Habeas relief is therefore warranted. Given the absence of lawful process at the outset of redetention, release is the appropriate and constitutionally required remedy.[3] This conclusion aligns with a broad consensus among district courts. *See*, *e.g.*, *Rojas v. Almodovar*, 2025 WL 3034183, at *8 (S.D.N.Y. Oct. 30, 2025) (Where "detention was invalid at its inception[,]" petitioner is "entitled to release."); *E.A. T.-B.*, 795 F. Supp. 3d at 1324; *J.Y.L.C. v. Bostock*, 2025 WL 3169865, at *2 (D. Or. Nov. 12, 2025); *Zhu v. Genalo*, 798 F. Supp. 3d 400, 415 (S.D.N.Y. 2025).

**D. Injunctive Relief**

Petitioner further seeks an order directing return of his property and personal effects to him upon his release and a permanent injunction barring any future redetention "unless his re-

[3] Although the petition raised additional claims, the Court will not address those because the Court grants the petition on due process grounds. (Dkt. # 1 at 26-29.)

detention is ordered at a custody hearing before a neutral arbiter in which the government bears the burden of proving, by clear and convincing evidence, that Petitioner is a flight risk or danger to the community." (Dkt. # 1 at 29.) The Court observes that Petitioner provides no argument or evidentiary support related to his property. The Court further observes that a permanent injunction requires a "cognizable danger of recurrent violation," not just a past violation. *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003); *see Torres v. Hermosillo*, 2026 WL 145715, at *8 (W.D. Wash. Jan. 20, 2026). The record shows no specific, real, and immediate threat that Petitioner will again be redetained without due process or in violation of applicable regulations. His request for permanent injunctive relief is therefore denied.

Petitioner also requests the Court "[s]et aside Respondents' unlawful practice pursuant to 5 U.S.C. §706(2) as contrary to law, and contrary to constitutional right, and in excess of statutory authority," and "[d]eclare that Petitioner's arrest and detention violate the Due Process Clause of the Fifth Amendment, the Administrative Procedure Act and the Immigration and Nationality Act." As the Court has granted habeas relief only on due process grounds, the Court declines to grant relief based solely on statutory grounds.

## III. CONCLUSION

Based on the foregoing, the Court ORDERS as follows:

(1) Petitioner's petition for writ of habeas corpus (dkt. # 1) is GRANTED in part. Respondents shall RELEASE Petitioner from immigration detention within **twenty-four (24) hours**, subject to his most recent pre-detention conditions of release.

(2) Respondents shall file a status report with the Court confirming Petitioner's release within **two (2) business days**.

(3) Petitioner's requests for injunctive relief are DENIED.

(4) The Court will entertain any post-judgment motion for attorney's fees, as requested in the petition. Any fee petition must be filed within the deadline set by the Equal Access to Justice Act, 28 U.S.C. § 2412. The parties are reminded of the meet-and-confer requirement under this Court's chambers procedures.

DATED this 1st day of October, 2026.

MICHELLE L. PETERSON
United States Magistrate Judge

…